James H. MURUNGI, and Asenath K. Murungi, Plaintiffs,

v.

MERCEDES BENZ CREDIT CORP., and John Holtz House of Vehicles, Inc., Defendants

No. 01–CV–6378–CJS.

United States District Court, W.D. New York.

Dec. 27, 2001.

James H. Murungi, pro se, Asenath K. Murungi, pro se, Mandeville, LA, for Plaintiffs.

Richard C. Maider, Deily & Dautel, Albany, NY, for Defendant MBCC.

Scott L. Malouf, Harter, Secrest & Emery, LLP, Rochester, NY, for Defendant HHOV.

## DECISION AND ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

Plaintiffs *pro se* ("plaintiffs"), residents of the State of Louisiana, filed a complaint in this Court on August 7, 2001, alleging causes of action under federal and New York State law concerning the purchase of a used 1989 Mercedes Benz from defendant Holtz House of Vehicles, Inc.[1] ("HHOV"). Financing of the car was ultimately assumed by defendant Mercedes Benz Credit Corporation ("MBCC"). By motion filed September 4, 2001, MBCC sought dismissal of the complaint pursuant to FED. R. CIV. P. 12(b)(6), failure to state a claim upon which relief could be granted. By application dated September 10, 2001,

HHOV sought similar relief. Plaintiffs responded on September 21, 2001, with what they entitled a "Reconventional[2] Demand of Plaintiff," and a motion for leave to amend the original complaint to include this demand. This document, the original complaint, and plaintiffs' filing, "Disposition of the Case," are the only pleadings which have been signed and filed by both Asenath and James Murungi. By an order entered October 5, 2001, the Court denied without prejudice plaintiffs' motion to amend and requested clarification of the intent of his filing. On October 19, 2001, plaintiff James H. Murungi filed a clarification, which stated that plaintiff's "reconventional demand against MBCC and HHOV is an additional response to MBCC's and HHOV's motions to dismiss."

The case is now before this Court on defendants' motions to dismiss made pursuant to FED. R. CIV. P. 12(b)(6). For the reasons stated below, the Court grants the applications of both defendants and dismisses the action in its entirety.

### FACTUAL BACKGROUND

As far as the Court can ascertain from the perplexing *pro se* complaint in this case, which must be construed liberally, *see Cameron v. Fogarty*, 705 F.2d 676, 678 (2d Cir.1983), plaintiffs allege causes of action pursuant to 15 U.S.Code § 1601, *et seq.*, the Truth in Lending Act; 15 U.S.Code § 2301, *et seq.*, the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act (Lemon Law); the New York Uniform Commercial Code; and the New York Lemon Law.

1. Misnamed in the caption as "John Holtz House of Vehicles." *See* Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [# 7] at 1.

2. In civil law jurisdictions, such as Louisiana, a plea by a defendant in a case which constitutes more than a mere defense and amounts to a counterclaim. *See* BLACK'S LAW DICTIONARY 1273 (6th ed.1991).

During oral argument on December 6, 2001, the Court noted the absence of Asenath K. Murungi, who is named as a plaintiff in the caption, and learned from plaintiff James H. Murungi that she is his wife, and that he was operating under the assumption that he could represent her. Upon further questioning by the Court, Mr. Murungi acknowledged that he was not an attorney at law, and therefore the Court indicated that it would not permit him, as a *pro se* litigant, to represent his wife. The Court explained that to do so, in the Court's opinion, would be to sanction the unauthorized practice of law.

The complaint in this case fails to allege exactly when plaintiffs purchased the used 1989 Mercedes Benz 300SE in question from HHOV and when the financing was sold to MBCC. Plaintiffs contend that shortly after taking delivery of the car, it began having mechanical difficulties. They allege seventeen separate visits to HHOV for engine malfunction repairs. In addition, they allege they took the car to Benson Mercedes Motor Company of New Orleans, Louisiana (not a party to this action) for major engine repairs in March of 2000 and again in May of 2000. Finally, they maintain that the vehicle is not functioning and needs a new water pump with an estimated cost of one thousand dollars. Plaintiffs sum up their experiences with this car by stating, "this is a real lemon car, from every aspect."

Plaintiffs seek damages in the amount of not less than seventy-five thousand dollars for each of their three counts and punitive damages of not less than fifty thousand dollars, again, for each of their three counts. They also seek attorneys fees and the costs of the action. Finally, they allege in a footnote in the complaint, "this civil action had previously been filed in the U.S.D.C. for the Eastern District of Louisiana but was dismissed under Rule 12(b)."

MBCC raises the defense of *res judicata*. MBCC alleges four previous law suits involving the Murungis and the used Mercedes in the courts in Louisiana over the previous two years and lists them in an affidavit by counsel. *See,* Affidavit in Support of Motion to Dismiss Plaintiffs' Complaint [# 4] at 2.

As detailed in the affidavit, MBCC first filed a petition for sequestration of the Mercedes on June 9, 2000, in the Twenty–Second Judicial District Court in the State of Louisiana. Petition for Sequestration, *Mercedes Benz Credit Corp. v. Murungi,* No.2000–12631–A (Dist.Ct., La. Jun. 9, 2000) (attached to Maider aff. at Exhibit B). The balance due in the petition is alleged to be ten thousand three hundred seventy-eight dollars and ninety-one cents. MBCC has also attached a copy of the Murungis' answer to that petition in which they argue that they are residents of the Parish of St. Taminy, State of Louisiana, and in which they raise as a first affirmative defense, a claim that they were defrauded by MBCC and in which they refer to a civil action based on fraud in the United States District Court for the Eastern District of Louisiana, then pending.[3] *See,* Maider affidavit at Exhib-

---

3. This first action in the Eastern District of Louisiana, No. 00–CV–3200 filed on October 30, 2000, against Mercedes Benz Credit Corporation, was dismissed on March 7, 2001, when that court granted MBCC's motion, because the Murungis' failed to respond to it. During oral argument before this Court on the present motions, Mr. Murungi stated that the failure was attributable to his lawyer.

Even though this fact may support a complaint against the responsible attorney for malpractice, no evidence before the Court has shown that the resulting judgment for MBCC on the finance contract has been successfully attacked and overturned. Plaintiffs appealed the judgment of the Eastern District of Louisiana dismissing their complaint against MBCC and the Fifth Circuit dismissed their appeal as

its B and C. Further, MBCC attaches a copy of a judgment issued on January 29, 2001, from the Twenty–Second Judicial District of the Parish of St. Taminy, State of Louisiana, in which the court found the law and the facts to be in favor of the plaintiff, MBCC, and entered judgment in the full sum of ten thousand nine hundred sixty-four dollars and seventy-eight cents, plus interest from October 13, 2000 until paid, at the annual percentage rate of 12.25%, plus a reasonable attorney's fee, plus all costs against defendants, James H. Murungi and Asenath K. Murungi. The Court takes judicial notice of the state and federal court judgments. *See,* FED. R.EVID. 201.

Then, in March 2001, the Murungis filed their second federal suit in the Eastern District of Louisiana against MBCC, and included for the first time .HHOV and others as named defendants. *Murungi v. Mercedes Benz Credit Corp.,* No. 01–CV–714 (E.D. La. filed Mar. 19, 2001). On June 12, 2001, the Honorable Edith Brown Clement, Chief United States District Judge for the Eastern District of Louisiana, filed an order granting HHOV's and MBCC's FED. R. CIV. P. 12(b) motions to dismiss case No. 01–CV–714. *Murungi v. Mercedes Benz Credit Corp.,* No. 01–CV–714, 2001 WL 649747 (E.D.La. Jun. 11, 2001). In her June decision, Chief Judge Clement wrote that the purchase of the used Mercedes took place on June 3, 1996 at Rochester, New York, from Holtz House of Vehicles, and that in September 1999, the Murungi's moved to Louisiana and shortly thereafter defaulted on their loan payments to MBCC. Subsequently, MBCC filed an action in Louisiana State court to enforce the financing contract, and while that action was pending, MBCC filed a writ of sequestration against the Murungis' vehicle.[4]

In July 2001, the Murungis filed a third federal lawsuit in the Eastern District of Louisiana seeking the reopening of their two prior unsuccessful actions. *Murungi v. Mercedes Benz Credit Corp.,* No. 01–CV–2006 (E.D. La. filed Jul. 2, 2001). In a lengthy decision, Chief Judge Clement found that the suit the Murungi's commenced against the present defendants and others in the Eastern District of Louisiana was precluded by the doctrine of *res judicata. Murungi v. Mercedes Benz Credit Corp.,* No. 01–CV–2006, 2001 WL 1490991 (E.D.La. Nov. 20, 2001). Chief Judge Clement found because the Murungi's had a full opportunity to litigate their Fair Collection Act claims against MBCC in the previous action and their appeal from the court's judgment was dismissed as frivolous, that the claims asserted in case No. 01–CV–2006 were barred by *res judicata.* She also dismissed the action against HHOV for lack of personal jurisdiction, since it was a New York corporation with its principle place of business in Rochester, New York. On August 7, 2001, the Murungis filed the instant *pro se* law suit here in the Western District of New York and named MBCC and HHOV as defendants.

## DISCUSSION

### *Asenath K. Murungi's Failure to Respond to the Motions*

 Federal Rule of Civil Procedure 11 requires that, "[e]very pleading, written motion, and other paper *shall be signed* by

frivolous. *See Murungi v. Mercedes Benz Credit,* 275 F.3d 1079 (5th Cir. Oct. 25, 2001).

4. As it turns out, through an error the writ was issued for a car the Murungis did not own; thus, neither the Mercedes nor the car in the writ was ever seized. *See* Smith aff. at ¶¶ 5 & 6.

at least one attorney of record ..., or, if the party is not represented by an attorney, shall be signed *by the party*." FED. R. CIV. P. 11(a) (emphasis added). Mr. Murungi was unable to provide any authority to the Court for his request to be accepted as Mrs. Murungi's representative in his and her *pro se* capacities. No response to defendants' motions to dismiss has been signed by Asenath K. Murungi. Since Asenath K. Murungi has not signed any response to the motions, and did not appear for oral argument, the Court grants defendants' motions to dismiss against Asenath K. Murungi.

### James H. Murungi's Response to the Court's Inquiry Made During Oral Argument

During oral argument, the Court directed Mr. Murungi to inform the Court in writing, within a week, as to whether he desired to continue the litigation against either MBCC or HHOV, especially in light of the language in Chief Judge Clement's November opinion:

> the Court agrees with MBCC that the Murungis' lawsuit, which seeks damages against MBCC for enforcing its legal right to collect a loan, has no basis in law or fact. Since the Murungis are proceeding *pro se*, the Court will not impose sanctions for their repeated frivolous filings at this time. However, the plaintiffs are advised that a fourth attempt to reassert their failed claims against MBCC, American Lenders Service Co. of New Orleans, Daniel A. Smith, Damon Daussat, or HHOV will be sanctioned.

*James and Asenath Murungi v. Mercedes–Benz Credit Corporation,* No. 01–CV–2006, 2001 WL 1490991 (E.D.La. Nov.20, 2001).

It is also clear, as the Court explained to James Murungi during oral argument, that the applicable statutes of limitations for the causes of action plead in this case expired prior to commencement of the suit and, despite Mr. Murungi's "beliefs," there is no case law or statutory authority which supports any tolling.

Pursuant to the Court's direction, referenced above, plaintiffs responded in writing and expressed their desire to press forward with all their claims, particularly those brought under the Magnuson–Moss Warranty Act. It is evident from their discussion of the inapplicability of the statute of limitations, that they are laboring under the misapprehension the claims under the Magnuson–Moss Warranty Act can be brought regardless of the lapse of time. As the Court discusses below, those claims are time barred.

### Standard of Review of a FED. R. CIV. P. 12(b)(6) Motion to Dismiss

On a motion to dismiss under the Federal Rules of Civil Procedure § 12(b)(6), the Court must accept as true, all factual allegations in the complaint and draw all inferences in favor of the plaintiff. *Bolt Electrical, Inc. v. City of New York,* 53 F.3d 465, 468 (2d Cir.1995). The Court may grant a motion to dismiss only if, viewing the allegations in the complaint in a light most favorable to plaintiffs, it appears beyond doubt that plaintiffs could not prove a set of facts in support of their claim which would entitle them to relief. *See, Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992).

### Res Judicata Pertaining to MBCC's Motion

 A final judgment entered on the merits of a case bars any further claims by the same parties or those in privity with them based on the same cause of action. This doctrine, known as *res judicata,* or claim preclusion, prevents any further litigation on any grounds or defenses to a

recovery that were previously available to the parties regardless of whether they were asserted or determined in the first proceeding. *See, Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *Res judicata* ensures the finality of judgments, encourages reliance on judicial decisions and bars vexatious litigation practices.

■ To determine whether a claim being asserted is the same claim which was or could have been asserted in a prior action, the Court applies a transactional test. Under this test, the first judgment will have a preclusive effect where the "same transaction or connected series of transactions" are at issue and the same evidence is needed to support the claims. *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992). It is the similarity of the facts at issue in the first and second law suits which determines the preclusive effect, not the legal theory upon which each of the lawsuits is based. As the Second Circuit has held:

> To prove the affirmative defense [of *res judicata*] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.

*Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285(2d Cir.2000) (citations omitted).

It appears from the complaint that plaintiffs' allegations against MBCC arise from the retail installment agreement executed by plaintiffs to purchase the Mercedes Benz from HHOV. It also appears to the Court, that the same allegations were involved in the lawsuits discussed above, which were adjudicated in the federal and state courts in Louisiana.[5] This is particularly so with respect to the law suit the plaintiffs filed in the Eastern District of Louisiana on March 19, 2001 (No. 01–CV–714) against MBCC, American Lenders Service Company of New Orleans, John Holtz House of Vehicles, Inc., and Daniel A. Smith. The claims in that lawsuit involved a 1989 Mercedes Benz 300SE, vehicle identification number WDBCA24E4KA449737 from Holtz House of Vehicles, Inc. and financed by MBCC on June 3, 1996. The exact same vehicle and the same purchase is at issue in the suit before this Court. *See* Complaint at 2.

■ Clearly the actions in the Eastern District of Louisiana have already adjudicated plaintiffs' federal claims. Plaintiffs' new claims in this court under the Magnuson–Moss Warranty Act, the Truth in Lending Act, New York Uniform Commercial Code and New York Lemon Law, and even plaintiffs' as yet unfiled claim for a "reconventional demand," cannot be litigated in this case. The previous action in the Louisiana state court involved an adjudication on the merits; involved the plaintiffs; and the claims asserted in the action before this Court were, or could have been, raised in the prior action. *See, e.g., Johns v. American Isuzu Motors, Inc.*, 622 So.2d 1208 (La.App. 2 Cir. Aug 18, 1993); La. Rev. Stat. § 51:1941 *et seq.* (Louisiana Lemon Law); La. Rev. Stat. §§ 10:1–101 to 10:9–509 (Louisiana's adoption of the Uniform Commercial Code); La. Civ. Code art. 2606 (Buyer's acceptance of nonconforming things); La. Civ. Code art. 2520 (Warranty against redhibitory[6] defects). Thus,

---

5. The Court takes judicial notice of the decisions in those cases. *See,* Fed.R.Evid. 201; 2 Moores Federal Practice, § 12.34[2] (Matthew Bender 3d Ed.).

6. In civil law jurisdictions, a redhibitory defect is a fault or imperfection in something sold, as a result of which the buyer may return the item and demand back the pur-

even though plaintiffs' claims under New York law were not raised in the Eastern District of Louisiana, or state action, and not adjudicated by those courts, the doctrine of *res judicata* precludes plaintiffs from raising and litigating them in this action against MBCC. *See, e.g., Hanover Ins. Co. v. Olin Corp.*, 1995 WL 598984 (S.D.N.Y., Oct.11, 1995) (discussing similarities between New York and Louisiana choice of law provisions).

### Statute of Limitations Defenses by HHOV

■ HHOV alleges that the complaint against it should be dismissed under Rule 12(b)(6) since the statute of limitations has run on each of the claims alleged. *See, Oakes v. Cooke*, 858 F.Supp. 330 (N.D.N.Y. 1994). Further, HHOV alleges that FED. R. CIV. P. 9(f) states that averments of time are material, therefore, the inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim. *See, Kincheloe v. Farmer*, 214 F.2d 604 (7th Cir.1954). The Court agrees.

As stated above, plaintiffs' complaint before this Court does not state the date on which the purchase was made. The earliest date mentioned is June 1996 when plaintiffs first returned the car to HHOV for repair shortly after their purchase. HHOV alleges that the longest possible statute of limitation is four years and three months [7] from the date of purchase. *See* Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [# 7] at 5–6. The first federal action in Louisiana was not filed

until October 30, 2000, four years and four months after taking delivery. The suit in the case at bar was not filed until five years and two months after the June 1996 date first mentioned in the complaint. Thus, HHOV argues that no cause of action survives the applicable statutes of limitations.

Mr. Murungi responds to HHOV's statute of limitations defense by arguing that (1) the statute of limitations was tolled during the extensive time HHOV and others had the car in their possession for repairs; (2) that the actions in Louisiana tolled the statute of limitations as to HHOV; and (3) that the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act does not have a limitations period. The Court rejects the fist two of Mr. Murungi's arguments and borrows the statute of limitations from the New York Uniform Commercial Code to apply to the Magnuson–Moss Act claim.

Plaintiff did not dispute during oral argument that the statute of limitations had run out prior to commencement of this action on all but one of his claims. As to his claim that the Magnuson–Moss Act does not have a statute of limitations, that claim is clearly refuted by case law.

■ When Congress has failed to specify a limitations period for an action created by legislation, it is well settled that courts must "borrow" a limitations period from the local limitation most analogous to the case at hand. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Court "may assume that, in enacting remedial legislation, Congress

---

chase price. Black's Law Dictionary (7th ed.1999).

**7.** HHOV, in its memorandum of law, at 5–6, arrived at this time by using a combination of the maximum statutory warranty of 90 days

and the limitation of four years from date of delivery to bring an action under the New York Lemon Law. *See* N.Y. GEN. BUS. LAW §§ 198–b(b)(1)(a) and 198–b(f)(6).

ordinarily 'intends by its silence that we borrow state law.'" *Id.* (citation omitted). Only in the rare occasion "when the operation of a state limitations period would frustrate the policies embraced by the federal enactment [courts look] to federal law for a suitable period." *Id.* The Court finds that borrowing the state Uniform Commercial Code statute of limitations would not frustrate the remedial policies of Magnuson–Moss. *See id.* at 355–58, 111 S.Ct. 2773. The Court further finds that New York's enactment of the Uniform Commercial Code statute of limitations is the closest analogous state limitations period. Several courts considering this issue have applied that limitations period to claims under the Magnuson–Moss Act. *See, e.g., Snyder v. Boston Whaler,* 892 F.Supp. 955 (W.D.Mich.1994); *Keller v. Volkswagen of America,* 733 A.2d 642 (Pa.Super.1999); *Cosman v. Ford Motor Co.,* 285 Ill.App.3d 250, 674 N.E.2d 61 (1996); *Sernak v. Krenzen Cadillac, Inc.,* 415 N.W.2d 92 (Minn.App.1987); *but c.f. Nelligan v. Tom Chaney Motors, Inc.,* 133 Ill.App.3d 798, 88 Ill.Dec. 826, 479 N.E.2d 439 (1985) (in *dicta* the court discussed applying a five year statute of limitations). The Court also relies on the sound reasoning of District Court in the District of Columbia in *Walsh v. Ford Motor, Co.,* 588 F.Supp. 1513, 1525 (D.D.C.1984):

> The Magnuson–Moss Act is not responsible for creating any new implied warranties for sales of goods. When referring to an *implied warranty,* the act means "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." [15 U.S.Code] § 2301(7). The scope of consumer protection from implied warranties under the Magnuson–

Moss Act is thus no greater than that previously recognized under state law. Reitz, Curtis R., *Consumer Protection Under the Magnuson–Moss Warranty Act* at 63–64 (1978) (emphasis in original).

*Walsh v. Ford Motor Co.,* 588 F.Supp. 1513, 1525 (D.D.C.1984). The Court concludes, therefore, that the most appropriate statute of limitations from which to borrow for the Magnuson–Moss Act claim is the four-year limitation in New York Uniform Commercial Code § 2–725. The limitations period for the New York Lemon Law is four years. *See* N.Y. GEN. BUS. LAW § 198–b(f)(6). The limitations period for a claim under the Truth in Lending Act is one year [8] from the date of the violation. *See* 15 U.S.Code § 1640(e). Unquestionably plaintiffs are beyond all these limitations. Mr. Murungi could not provide the Court with any authoritative case law or statute which would toll the limitations period as he suggested in his response and at oral argument.

The Court also finds as a matter of law that plaintiffs' federal actions in Louisiana did not toll the statute of limitations. The first action, against MBCC, was started after the limitations period had already expired and the action that named HHOV as a defendant, No. 01–CV–714, was not begun until March 19, 2001, approximately four years and nine months after delivery of the car. Moreover, even if the action against HHOV had been timely begun, unlike the dismissal on the merits involved in the case against MBCC, the Louisiana District Court's dismissal of the case filed against HHOV was for lack of personal jurisdiction. A dismissal for lack of jurisdiction is a dismissal "without prejudice." *See Criales v. American Airlines,*

---

**8.** The state attorney general has three years from the date of the violation to bring an action. *See* 15 U.S.Code § 1640(e).

*Inc.,* 105 F.3d 93, 95–97 (2d Cir.1997); *see also* 8 MOORE'S FEDERAL PRACTICE, § 41.50[7][c] (Matthew Bender 3d ed.). When a dismissal is without prejudice, the statute of limitations is not tolled and the parties are left in the same legal position as if no suit had been filed. *See Hilbun v. Goldberg,* 823 F.2d 881, 884 (5th Cir.1987); *see also* 8 MOORE'S FEDERAL PRACTICE, § 41.50[7][b] (Matthew Bender 3d ed.). Thus, the suit in the Eastern District of Louisiana against HHOV could not have tolled the time period and plaintiffs are barred from suing here by the applicable statutes of limitation.

### Sanctions

Though neither defendant moved[9] for sanctions, the Court, *sue sponte,* in light of Chief Judge Clement's warnings in her decision of November 20, 2001, will consider the question under FED. R. CIV. P. 11(c)(1)(B). Although plaintiffs *pro se* may not have known they could not assert claims against HHOV due to the statute of limitations, clearly they were on notice that they had *absolutely* no valid claims left against MBCC. They were essentially told that three times by a federal district judge in Louisiana and once by a state court judge. Their attempt to litigate claims against MBCC in this district is, therefore, patently frivolous. However, in view of the fact that plaintiffs are *pro se,* and that Chief Judge Clement's decision warning plaintiffs of the imposition of sanctions was not entered until November 20, 2001, three months after plaintiffs began this action, the Court will not pursue the appropriateness of sanctions at this time. However, plaintiffs' are clearly warned and on notice, that any further attempt to litigate the subject matter of this action will expose them to the fullest

range of sanctions. In that regard, they are directed to the Federal Rules of Civil Procedure.

### CONCLUSION

In light of the above, it is hereby

ORDERED, that defendants' MBCC's and HHOV's motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6) are granted; and it is further

ORDERED, that the Clerk enter judgment in accordance with this decision.

It is so ordered.

**9.** Following oral argument, both counsel requested the Court to consider sanctions.

However, as discussed below, the Court declines to impose sanctions.